And we'll move to the second case this morning, Dix v. Edelman. Good morning, counsel. Good morning. Good morning. Good morning. Mr. Hardaway, you may proceed. Thank you, Your Honor. May it please the Court, Daniel Scott Herala as court appointed amicus in support of Mr. Dix. Your Honor, Mr. Dix's complaint is construed liberally, and the allegations are taken as true. He has stated a plausible Fourth Amendment claim based on his wrongful eviction from his home under the reasoning of Soledad B. Cook County. And I think it's important to explain at the outset that the defendants do not contest the idea that SOLDAL stands for the proposition that a wrongful eviction can qualify as a Fourth Amendment seizure. Rather, as I read their briefs, Ms. Miller seems to primarily be arguing that Mr. Dix did not have a possessory interest in the home, and the officers primarily argue that the seizure here was reasonable, and therefore, there was no Fourth Amendment violation. And I'd like to address both points. Regarding Mr. Dix's possessory interest in the home, I think the briefs go into a lot of detail about Illinois landlord-tenant law where I think this court can kind of short-circuit that analysis. So, if this court looks to footnote one in this opinion in White v. City of Markham, this court said that Mr. White's quasi-tenant status in that case was sufficient to create a possessory interest for Fourth Amendment purposes. But don't we look to state law to determine what property is? And my read of Illinois law is that he was a licensee, and she terminated the license. If he were a tenant, it would be a different case. Sure, Your Honor. So, I think what White did was White cited People v. White, which is an Illinois Supreme Court case. And in that case, the Illinois Supreme Court said that for Fourth Amendment purposes, the home is conceived of broadly, and it's really a functional analysis of what the home is when we're dealing with Fourth Amendment issues. But that might be true for the privacy interest, right? But this is a little bit different. So, if you're talking about where you have a reasonable expectation of privacy, that seems to be a different inquiry than whether your property was seized, taken. Your Honor, I think it is slightly different in kind of conceptualization, but the court in White v. City of Markham, which is a similar context, did rely on that proposition from Illinois law finding that the person in that case had a sufficient property interest. But even if we have to look to Illinois law and decide whether Mr. Dix was a tenant or a licensee, I think that's just a fact question that can't be resolved at this juncture. Because as the Illinois case has made clear, there are a number of factors that courts consider when deciding whether a license is established or whether a tenancy is established. And I think at this point, when you have to accept Mr. Dix's allegations as true, you have to assume that he was a tenant of Ms. Miller's, assuming that is relevant to the Fourth Amendment analysis. But even if he were a licensee, I think there's also a fact question about whether she terminated the license or whether she could terminate the license. Because Illinois law also places restrictions on a licensor's ability to terminate a license. So, while I don't think under White v. City of Markham in footnote one, the court has to engage in that kind of parsing of Illinois law, I think at this juncture, it's just too soon to kind of engage in that fact-intensive parsing. I take it, Professor, you're referring to the so-called fraud exceptions to termination of a license? Yes, Your Honor. And at least as I read Illinois law, the Supreme Court and the Illinois courts have been very, very cheery about opening that up as a loophole to where you need, what, substantial sums of money and improvements for the benefit of the licensor and great wrong and oppression, right? Need all three of those. Yes, Your Honor. Okay. And can I follow up a little bit on Judge Barrett's question? Yes, of course. And White here, if we're talking about a home for purposes of Fourth Amendment privacy interests, maybe, Judge Barrett, I'm just catching on, figuring out what it is you were asking about. But if we're talking about privacy interests kind of vis-a-vis the rest of the world, that's one thing. But if we're talking about dealing with rights as between the property owner and this, just call them temporary occupant, that would seem to me to be a much narrower question. Because the point I think that we made in White as well was that if the police officers had acted differently there, or if they had acted differently than they did here, the owner's Fourth Amendment rights would have been violated by the police. Sure, Your Honor. I think a couple of points in response to that. I think initially, in White, I reread the briefing in that case, and they really weren't pressing a sold-off-based seizure-type argument in that case. So that could be perhaps why White did not address the issue as it's framed in this case. But importantly, I don't think the court needs to conceive of this case as being a dispute between two parties' property interests. The question is whether the state could interfere with Mr. Dix's possessory interest in his home. And I don't think anybody disputes the fact that this was Mr. Dix's home. This is where he lived. This is where his belongings were. This was his home. And so I do think, even though the search-versus-seizure context is a little different, I do think that functional analysis is really important here when we're thinking about state intervention versus a dispute between private parties. And he has to have, for purposes of a sold-off-type claim, this is my sticking point here. He has to have a possessory interest that is being interfered with, that's being taken. And I might think of, if I go visit a friend and I'm staying there for quite a while, I might start to think of it as my home, particularly if I don't have another. But my emotional attachment to it or my frame of mind wouldn't give me a property interest. I'd be a licensee staying with her as a guest. Sure. I mean, Your Honor, I think that's true, but I think that's why, at this stage, it's a really hard question to resolve, because Mr. Dix had lived there for years. And this was his only place of residence. So the idea that he didn't establish a possessory interest in this particular scenario, I think, really just defies the nature of his living arrangement. And I think, given his allegations that he was paying to live there, both through of him having a possessory interest that is recognized under Illinois law. And I think if you look to Mr. Dix cites in his brief, document 105-3, where Ms. Miller talks about renting out the basement to somebody else and moving him to a different room. And so, I do think, at this juncture, again, accepting everything is true, he has established some form of possessory interest in the home. He has established that Ms. Miller is at least willing to rent out part of the home. And so, I do think, while I don't think this court needs to find he was a licensor versus a tenant, I think, at this point, this court should accept his allegation that he has a tenant as true, because it's not a ball desertion. There are facts in his pleadings. Your Honor, was this a situation right from the beginning, a landlord-tenant situation between the two? I don't think that is precisely clear from the pleadings, Your Honor. But what I think is clear from the pleadings is that, to the extent Mr. Dix and Ms. Miller had a romantic relationship that terminated, and that he did become her tenant at that point. I don't think the beginning nature, at least to me, is not abundantly clear. But I do think what is clear from his allegations that at some point, it turned into a landlord-tenant relationship. The problem is that nothing in his allegations, taking everything he alleges is true. And he has a lot of allegations. It's not a brief complaint. But taking everything he alleges is true. He hasn't alleged anything that indicates he has a tenancy. There's no regular payments. A lot of the things that he says he provided in the way of cash or improvements were kind of done under protest. But there's nothing that bears the hallmarks of what's required by landlord-tenant under Illinois, which is why I think that even accepting all of his allegations as true, he's pled a license. And accepting all of his allegations as true, she terminated the license when she said, you've got to move because I'm selling the house. Sure. Again, Your Honor, so I do think, and I'm sorry to harp on this, but I do think this kind of question of his possessory interest was resolved in White, where the court did say Mr. White had a possessory interest. So I don't know if it's an open question in the circuit. But given the allegations in the complaint and his allegations that he paid money to Ms. Miller, that he performed services for Ms. Miller, I do think accepting those as true, that does create a possessory interest. But I also don't think Ms. Miller could terminate the license under circumstances under Illinois law and based on Mr. Dix's allegations, even though it's a high standard, as Judge Hamilton alluded to, I do think there's a real factual question about whether a license could be terminated under these circumstances freely. Did Mr. Dix ever claim that he had exclusive control over any portion of the property? I've understood Illinois law to make that pretty critical. Sure. I don't think Mr. Dix expressly made that allegation. But I think if you look at, again, and I think this document is helpful, document 105-D in the record, it seems to me the most liberal construction of that document shows that Mr. Dix at least had the basement reserved for his use. Ms. Miller was contemplating moving another tenant into the basement, and Mr. Dix protested that arrangement. So I do think a liberal construction of the documents in the record shows that Mr. Dix did have a house reserved for his use. And again, I know there are a lot of factual allegations in this complaint. But I do think it's not necessarily most helpful to frame this as a dispute between two parties, but rather think about what the police were doing when they interfered in Mr. Dix's possessory interest and what the police knew when they decided to interfere with his possessory interest. And here, Mr. Dix's clear allegations were that Ms. Miller and the officers conspired to remove him from his home. And in that instance, I think this is heartland Fourth Amendment territory, because the Fourth Amendment is designed, its central purpose is to protect one's home from government intrusion, and that's exactly what happened here. And so I think kind of characterizing this as a property dispute without thinking of the state action and how that affects the analysis really kind of unnecessarily cabins the inquiry. And even though People v. White, which this court in white relies on, was dealing with a different context, I do think it's important to be flexible in the idea of the home when we're thinking about police involvement and police interfering with one's possessory interest in the home. And if I may, I'd like to reserve my remaining three minutes for rebuttal. Thank you. Thank you. Mr. Ash, you're also muted. Thank you. Good morning, your honors. May it please the court. My name is Thomas Ash, and I represent defendant Theresa Miller. Listening to the argument of amicus, it seems to me that he was advocating a sort of amorphous federal possessory right that doesn't exist under Illinois law or the law of any other state I know of that the federal government should constitutionalize a non-possessory license as a possessory interest. The basis for determining whether a possessory interest exists comes from things like the common law and the general expectations of the populace. And I think if you look at the variety of cases, not just in Illinois, but also the foreign cases that I cite, one can see that culturally there's just a belief that a licensee, a house guest, has no possessory right. For example, if you look at the Hawaii case, which I believe was Keim, in that case the Supreme Court of Hawaii ignored or was didn't ignore, but there was a statutory presumption that anybody in the home who was paying to live in a home was a tenant. Yet the common law concept of a license trumped that statute, and the court still held there was no possessory interest. Similarly, in the Iowa case, and I may have these backwards, but let me... Oh, okay. Yeah, in the Iowa case, the possession with assent of the owner raised a presumption of tenancy, but the common law notions of what is who is a licensee actually trumped that statute, and that's why it got to the Supreme Court. This is so well established in the common law which Illinois adheres to. It doesn't have a statute defining who a tenant is. It overcame that presumption of tenancy, and similarly in the Hawaii case, the statute defined any occupant under agreement to be a tenant, and the Hawaii case still said no, there's no possessory interest. So beyond the common law of Illinois, which is very clear that a license is not a possessory interest, in fact, it's specifically stated to be it's only a revocable privilege to go upon land, shows that the things we draw our expectations of constitutional protections from are all in favor of my client, Miller, that there was no possessory interest in the house. Thank you, Mr. Hayes. I'm sorry. Thank you, Your Honor. May it please the Court, Allie Burnett for the Village of Lyle, Officers Summer, McKay, and Anders. Your Honor, amicus here focuses their argument regarding the reasonableness of my client's alleged seizure here and indicates it can't be reasonable because plaintiff alleged on the face of the complaint that there was no domestic disturbance, but to accept that position would be to ignore all the other evidence in the record that establishes there actually was a domestic disturbance underway at the time that the officers responded to Ms. Miller. Ms. Miller had called the police two days in a row to address disputes between herself and Mr. Dix. On the date prior to the subject date here, August 24th, and that date, Ms. Miller made repeated requests that Mr. Dix move out and move his property from the home. At the TRO hearing before the District Court, Mr. Dix testified that Ms. Miller was yelling at him, told him to get out three to four times, and said, quote-unquote, get the F out, things of that nature. During the entire process of the evening at issue, or of the response at issue when my clients were at Miller's home, there were verbal altercations between Mr. Dix and Jane Doe No. 2, who was helping to move. Plaintiff testified during the TRO hearing again. He was, quote-unquote, furious throughout the entire encounter. On the face of plaintiff's complaint, he alleged the situation had, quote-unquote, become deranged. So between that fact and the fact that there was an ongoing dispute between Ms. Miller and Mr. Dix as to who had the right to remain at the property and the property owner's demand that they leave, the officers reasonably exercised their caretaking function to direct Mr. Dix to remove himself and his property from the home and to leave. Here, even if there was no violence in the dispute, the cases hold that they have the right to intervene when there's a domestic disturbance. To my knowledge, there are no cases indicating there's a threshold for that disturbance as to the escalation of that disturbance or at which point my clients could have intervened as part of their caretaking function. That function recognizes their duty to keep the peace. And here, it's our position the officers did not have to allow the situation to escalate further until there was violence, and it was indeed their role to ensure that didn't occur. So from our perspective, the district court properly concluded that the indeed recognized as the court indicated before Ms. Miller's own Fourth Amendment rights to remain in her home and retreat into her home and ordered Mr. Dix to leave. Finally, in situations Ms. Burnett where the criminal law processes or the police are basically expected to leave parties to their civil remedies to sort these sorts of things out. In this situation though, as I understand it, your position is that these officers had to pick somebody. They had to choose one way or the other. Correct, because there was an ongoing dispute where Ms. Miller did not want him in her home, and he was apparently dead set on going back into the home. So to avoid further confrontation, it's our position that to keep the peace, the officers reasonably directed Mr. Dix to leave. If you wanted to use state law remedies to go with that. Thank you. Ms. Bartolucci, you're still muted. Thank you. May it please the court. Your honors, I represent the two private actor defendants in this case. We have adopted our co-defendants arguments on the Fourth Amendment issues. So I just wish to address with you the alternative grounds that I believe exist in our motion to dismiss briefing in the district court for affirming the dismissal of my clients. The alternative grounds are that my clients did not act as state actors in connection with any of the police activity that is alleged by Mr. Dix. As the court knows, private citizens can only be brought within section 1983 under two circumstances. One being that they conspired with a public employee to deprive the plaintiff of constitutionally protected rights, or became an officer pro tem. The second basis does not exist here. The basis Mr. Dix asserts is that my clients conspired with two groups of police officers to deprive him of his constitutional rights. If we look to the first events, that would be his allegedly unconstitutional eviction. The facts of his complaint, even construed in his favor and accepted as true, demonstrate zero interaction between my client and the police officers who assisted Ms. Miller in removing him from the home. My client's only alleged involvement was as a realtor, suggesting that her client staged the home, which allegedly included getting her to get Mr. Dix out of the home. However, the agreement alleged was only between my client and Ms. Miller. And in fact, the facts that developed indicated that that agreement was not kept because Ms. Miller ended up contacting the police for assistance prior to the date that my client has suggested the home be staged by. So Ms. Miller independently contacted the police and asked for their assistance. So there's zero allegation of factual involvement with my client in that element of a police action. And then as far as the threat to prosecute Mr. Dix, that never came to fruition and he's alleged no constitutional deprivation. Thank you. Good morning, Your Honors. May it please the court. Matthew Heimlich here on behalf of the City of Wheaton and Officer Vitaly Loren. Given the question presented on appeal with regards to my clients, namely whether count 11 of plaintiff's first amended complaint states a claim under which relief could be granted under section 1983 and that the amicus council did not address plaintiff's claims against the City of Wheaton or Officer Lord, either in his brief or in his argument, we're prepared to stand on our brief, but would be happy to answer any questions posed by the court. I don't believe there are any questions. Thank you, Mr. Heimlich. All right. Thank you, Your Honor. For the reasons set forth in our brief, we respectfully request that the court affirm the district court's decision. Thank you. Mr. Einstein. Thank you, Your Honor. And may it please the court. Ben Fabianslasson on behalf of Defendant Appellee Edelman Financial Services. I'd like to briefly explain why Edelman does not belong in this federal civil rights action. Edelman is a private financial services company. It had no business relationship with Mr. Dix or direct dealings with Mr. Dix. It never had any direct interactions with Mr. Dix whatsoever. And it never provided Mr. Dix with any financial advice or financial services. This court has been focused on the fourth amendment issues, but those issues do not apply to Edelman. Mr. Dix never asserted a constitutional claim against Edelman. He does not allege that Edelman had any interactions with the police. And he does not allege that Edelman had any involvement in his eviction and removal from Ms. Miller's home. So to be clear, his federal constitutional claims at the heart of this case are completely distinct and entirely independent from his state law claims against Edelman. And those state law claims lack any legal foundation or factual foundation. The entirety of the claims against Edelman are based on the allegation that Edelman provided financial advice to Ms. Miller, its client. And as the district court explained, that advice does not provide a plausible basis for liability. And it certainly does not amount to a conspiracy, as Mr. Dix has alleged. For these reasons, the district court promptly dismissed Edelman from the lawsuit at the outset of the proceedings. And it's well-reasoned decision to do so should be affirmed. Simply put, Edelman never should have been named in this civil rights lawsuit in the first place. And the claims about against it lack any merit. I'd, of course, be happy to answer any questions of the court or to explain further why the specific claims lack merit. But if there are no questions, I would respectfully defer to the briefs and would ask this court to affirm the judgment entered in favor of Edelman, regardless of how it rules on the Fourth Amendment issues. No questions. Thank you, Mr. Pavin-Blassen. Thank you, Your Honor. We're back now to Mr. Harwell. Thank you, Your Honor. So based on the panel's questions, I'd like to focus a little bit more on the possessory interest here because I think it's really important. The idea that Mr. Dix does not have a possessory interest for Fourth Amendment purposes would really turn the Fourth Amendment on its head. There is no question that if this were a criminal case and the police came to the house and seized any of Mr. Dix's property, he would be able to state a viable Fourth Amendment claim. And in fact, when you look at this court's en banc opinion in Soledad, the dissent was saying that the reason it makes, it turns the Fourth Amendment on its head to find that a citizen who has been accused of nothing has less constitutional rights than a citizen who has been accused of a crime. And ultimately, the dissent was vindicated by the Supreme Court in Soledad. And again, while people be white, which is the Illinois Supreme Court case, in which the court explains it has an expansive view of the Fourth Amendment, of the home for the Fourth Amendment purposes, while it is a different context, I do think the court's language is really important and really covers this circumstance. So I'd just like to quote it really quickly. And the Illinois Supreme Court said, the importance of the guarantee against physical intrusion into the home mandates a liberal construction of claims that a particular place is a suspect's dwelling. It also suggests that whether a particular place is to be deemed a suspect's home will depend on the suspect's association with a particular place and provides a suspect with a reasonable expectation of privacy such that he would be justified in believing that he can retreat there secure against government intrusion. And I think that applies squarely here. Regardless of what Illinois law says about a landlord and a tenant or a licensor and a licensee, Mr. Dix thought that he was free to be in this home, free from interference from police. Now whether... Thank you, Professor. You've offered some very, very helpful insights, I have to say, in the additional briefing that we'd asked for. The thing that's troubling me is what I guess in this context where of a private dispute over occupancy of private property, if the police have to make a choice, it seems like they're open to being sued by whichever party is unhappy, right? They have to choose between Miller and Dix in this case in keeping the peace. And if you're right in the way the Fourth Amendment applies here, then they're inevitably going to be violating somebody's rights. Sure. Well, Your Honor, I think to that point, I don't think... I think based on the allegations of Mr. Dix's complaint, the police did not have to make a choice. And in fact, they conspired with Mr. Dix in his home is not violating Ms. Miller's rights. All that is saying is that Ms. Miller must result to the process set out under Illinois law to remove Mr. Dix from the home. So I don't think the police saying we can't get involved here would qualify as a constitutional violation. And in fact, I think the police would be saying, look, Illinois law provides a remedy for this kind of internal domestic disagreement, and we can't get involved. But again, under Mr. Dix's well-pled allegations, he said that the police knew there was no domestic disturbance, knew that he had a right to be in the house and proceeded to use their state power to remove him from the house anyways. And I think that's the crux of his claim. And I think that is heartland Fourth Amendment territory. And this court should reverse the district court's dismissal of this Fourth Amendment claim. Thank you, Mr. Miller. Thanks to all counsel. And the case will be taken under advisement.